IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

TERESA ADAIR                                              PLAINTIFF

V.                                                        CIVIL ACTION NO.
                                                          2:07-CV-91-P-A

MICHAEL J. ASTRUE,
COMMISSION OR SOCIAL SECURITY

## MEMORANDUM OPINION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Teresa Adair for a period of disability and disability insurance benefits under Title II and Supplemental Income (SSI) benefits under Title XVI of the Social Security Act. This action is brought pursuant to § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). The district court's jurisdiction over Adair's claim rests upon 28 U.S.C. § 1331.

## PROCEDURAL HISTORY

Teresa Adair filed her application for a period of disability, disability insurance benefits and supplemental security income on April 21, 2004, alleging an onset date of disability of September 1, 2001. After her claim was denied twice, Adair requested a hearing before an administrative law judge (ALJ), which was held on August 29, 2006. On September 28, 2006 the ALJ issued his decision denying the claim. Adair's request for review by the Appeals Council was denied on March 21, 2007. The Appeals Council's denial of the petition for review perfected the ALJ's decision as the final decision of the Commissioner, which is now ripe for the court's review.

## FACTS

Adair was born on September 20, 1957, and was 42 years old at the time of the hearing decision on September 28, 2006. She earned a GED and completed two years of college and previously worked as an cocktail waitress, factory worker, and a census worker. Her work history demonstrates a series of jobs that lasted less than one year. (R. 101, 138).

The plaintiff alleged that she suffered from bi-polar disorder, post-traumatic stress disorder. The record presented to the ALJ included, treating physician records, hospital records, vocational assessments, field office reports, third-party information regarding her activities of daily living, mental residual functional capacity assessments and assessments from independent physician. The records begin in 1998 and end in 2004.

The ALJ found that the plaintiff experiences maniac episodes two times per week, which last for one to two days at a time. (R.17). He also found that she experiences depressive episodes three days per week during which she engages in extended crying spells, experiences adhedonia, hopelessness and suicidal ideation. (R. 17). Consequently, he found that her mental residual functional capacity for the performance of significantly less than the ful range of work at any level of exertion. (R. 17). Nonetheless, the ALJ found Adair not disabled because of her history of poly substance abuse and dependance, which was a contributing factor material to the determination of disability. (R. 21). Further, the ALJ found that if she were to discontinue her poly substance abuse and dependence she would retain "satisfactory" abilities to perform multiple components of mental functioning. (R. 21). This in turn would allow the plaintiff to return to work at her past relevant work. (R. 22).

## DISCUSSION

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390 (1971)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner,[1] even if it finds that the evidence leans against the Commissioner's decision.[2] If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[3] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his

---

[1] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[2] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

[3] *See* 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520(2007).

burden at each of the first four levels, the burden then shifts to the Commissioner at step five.[4]

First, the plaintiff must prove he is not currently engaged in substantial gainful activity.[5] Second, the Commissioner considers the medical severity of the claimant's impairment.[6] At step three the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[7] Fourth, the Commissioner considers their assessment of the claimant's residual functional capacity and the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[8] If the plaintiff is successful at all four of the preceding steps the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[9] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that he cannot, in fact, perform that work.[10]

Adair asserts that the Commissioner erred in three ways:

(1) failing to properly find whether her poly substance abuse was material to the

---

[4] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[5] 20 C.F.R. § 416.920(a)(4)(I); 20 C.F.R. § 404.1520(a)(4)(i)(2007).

[6] 20 C.F.R. § 416.920(a)(4)(ii); 20 C.F.R. § 404.1520(a)(4)(ii)(2007).

[7] 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404.1520(a)(4)(iii)(2007).

[8] 20 C.F.R. § 416.920(a)(4)(iv); 20 C.F.R. § 404.1520(a)(4)(iv)( 2007).

[9] 20 C.F.R § 416.920(a)(4)(v); 20 C.F.R. § 404.1520(a)(4)(v)(2007).

[10] *Muse*, 925 F.2d at 789.

determination of disability in accordance with 42 U.S.C. § 423, 20CFR § 404.1535;

(2) mischaracterizing the vocational expert's testimony; and

(3) improperly closing the record after plaintiff's counsel requested to develop the record after 2004.

In the case at hand the ALJ initially found plaintiff suffered from bi-polar disorder and that was "severe" within the meaning of the Act, but did not meet or equal a listed impairment. Although plaintiff's residual functional capacity was such that no jobs existed in the national economy which she could perform, the ALJ determined that polysubstance abuse was a "contributing material factor" to her disability. In short, he found that if the plaintiff"ceased her extensive and ongoing alcohol abuse" and assuming she could not return to her past relevant work, she would be able to perform other work. (R. 22). Accordingly, the ALJ denied the application for benefits in accordance with the 1996 amendments to the Social Security Act. 42 U.S.C. § 423(d)(2)(C).[11]

"According to the amendment's implementing regulations, the 'key factor . . . in determining whether alcoholism is a contributing factor material to the determination of disability' is whether an individual would still be found disabled if he stopped using alcohol or

---

[11]The 1996 Amendments changed the provisions of 42 U.S.C. §§ 423 and 1382 which are the bases, respectively, for awards of DIB and SSI benefits. As amended, the Social Security Act now provides that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addition would (but for this paragraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). As a means of implementing these reforms, the Social Security Administration adopted regulations which direct the ALJ's mechanical application of the law. 20 C.F.R. §§ 404.1535; 416.935. Under these regulations, a finding of disability is a condition precedent to the requirement that the ALJ inquire as to whether alcoholism or drug addition is a contributing factor to the disability. *Oritz v. Apfel*, 39 F. Supp. 2d (D. Kan. 1998) ("Sections 404.1535(a) and 416.935(a) . . . clearly demonstrate that the Commissioner must find disability before applying the amendatory language.").

5

drugs." *Williams v. Apfel*, No. 97 C 5551, 1998 U.S. Dist. LEXIS 19281, at *25-26 (N.D. Ill. Dec. 3, 1998) (citing 20 C.F.R. § 416.935(b)(1)). "'In making this determination [the Commissioner] will evaluate which of [the claimant's] current physical and mental limitations would remain if she stopped using drugs or alcohol and then determine whether any or all of her remaining limitations would be disabling.'" *Id.* at *26 (quoting 20 C.F.R. § 416.935(b)(2)). The Fifth Circuit has followed the same reasoning as the *Williams* court and placed the burden on the claimant to show that "drug or alcohol addiction is *not* a contributing factor material to her disability." *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999) (emphasis added).

Multiple circuits, including the Fifth Circuit, have consistently held that burden remains on the claimant to prove their entitlement to benefits. *Parra v . Astrue*, 481 F.3d 742, (9th Cir. 1999). In order to meet this burden, claimants must be given an opportunity to present evidence as to whether their disability would remain if they stopped using drugs and alcohol. *Sousa v. Callahan*, 143 F.3d 1240, 1246 (9th Cir. 1998).

It appears that the ALJ in the instant case followed the correct procedure by first determining whether plaintiff was "disabled" within the meaning of the Act, and only then reaching the issue of whether alcohol abuse was a contributing factor.[12] (R. 22 . For the court it remains to look to the record to determine whether substantial evidence supports the ALJ's decision that plaintiff failed to sustain her burden of proving that poly substance abuse was *not*, indeed, a contributing factor. The ALJ based his decision upon, *inter alia*, the testimony of a vocational expert, specifically stating in the written opinion denying benefits that an "impartial vocational expert testified that . . . if the claimant ceased her extensive and ongoing poly

---

[12]*Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003).

substance abuse and dependence, the claimant could return successfully to the performance of her past relevant job classifications.' (R. 20). However, the second hypothetical question, which was the only one to which the VE responded that plaintiff could return to work, made no mention of poly substance abuse whatsoever and asked the VE to assume plaintiff "retained satisfactory abilities to understand and remember and carry out detailed instructions, to remember locations and work like procedures, to maintain attention and concentration for extended periods, to perform activities within a schedule, to work with other people without becoming distracted by them, to complete a normal workday and work week without psychologically based interruptions, to interact appropriately with the general public or with supervisors, to get along with coworkers without distracting them, to maintain socially appropriate behavior and to respond appropriately to changes in her work setting."[13] (R. 363). With these minimal, if any, limitations, and these alone, the VE testified that plaintiff could return to work.

    Nevertheless, in reaching the conclusions underlying this hypothetical, the court finds that the ALJ overstepped his bounds and drew his own medical conclusions about the extent of plaintiff's substance use and its effect on her ability to work. Hospital records demonstrate the existence of the plaintiff's alcohol and marijuana use and dependence, which is primarily based upon the plaintiff's own report of her use of alcohol and drugs. (R. 200, 215-15, 240, 245, 267). However, there is no evidence in the record that the plaintiff exhibits any medical symptoms related to poly substance abuse. The ALJ found the plaintiff's testimony regarding her mental

---

    [13]This hypothetical is not supported by substantial evidence as found in multiple vocational assessments and the residual functional capacity assessment, which demonstrated that the plaintiff has moderate limitations in her concentration, memory, social interactions, ability to adapt. (. 163, 282, 312-13)

functioning as credible to support the conclusion "that her mental residual functioning capacity for the performance of significantly [was] less than the full range of work at any level." (R. 17). In contrast, the ALJ found that the description of her poly substance abuse was not credible. (R. 18- 19). The credibility determination was made without consideration of the plaintiff's history of moderate memory and concentration problems. (R. 111, 163, 179, 227, 245, 258, 292-93, 312). While the plaintiff's description of her drug and alcohol abuse may be contradictory at times throughout the record, there is no substantial evidence to support the conclusion that if she were to stop using alcohol or drugs, she would no longer be disabled due to her bi-polar disease. Further, even if there were substantial evidence in the record to demonstrate that her poly substance abuse exacerbated her symptoms, there is not substantial evidence in the record to support the inverse: i.e. that cessation of drugs or alcohol would abate the bi-polar disease. *See Brown v. Apfel*, 192 F.3d 492, 499 (5th Cir. 1999).

The record is further limited by the ALJ's refusal to allow the plaintiff to present medical evidence from 2004 through the 2006 hearing date. The plaintiff testified that she stopped using marijuana in 2003 and stopped using alcohol in 2005. (R. 346). As there is no record to demonstrate whether the plaintiff's bi-polar disease remains disabling in the absence of the poly substance abuse, the ALJ's determination that the plaintiff's poly substance abuse was material to the determination of disability was erroneous. In order to meet her burden, the plaintiff must be allowed to present evidence as to the materiality of her substance abuse on the determination of her disability and eligibility for benefits.

For the foregoing reasons, the court concludes that the Commissioner's decision that Adair could still perform a full range of work if she stopped her poly substance abuse is not

supported by substantial evidence and should be reversed. The case shall be remanded to the Commissioner of Social Security with instructions to require the ALJ to review the evidence *de novo*, taking such further evidence as is required to determine the plaintiff's eligibility for benefits under the law and in accordance with this memorandum opinion. A separate judgment reversing the Commissioner's final decision shall issue simultaneously with this Memorandum Opinion.

This the 23rd day of September, 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE